# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| TALEB SAID DAWOUD, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | No. 3:06-CV-1730-M (BH) |
| § | | |
| DEPARTMENT OF HOMELAND § | | |
| SECURITY (USCIS & FBI), § | | |
| Defendants. § | | Pretrial Management |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Special Order No. 3-251, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations to the District Court on dispositive motions. Before the Court are the following motions:

(1) *Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* ("USCIS Mot."), filed April 9, 2007, by Defendant Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS");

(2) Defendant USCIS's *Brief in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* ("USCIS Br."), filed April 9, 2007;

(3) *Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* ("FBI Mot."), filed April 30, 2007, by Defendant Federal Bureau of Investigations ("FBI");

(4) Defendant FBI's *Brief in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* ("FBI Br."), filed April 30, 2007;

(5) Defendant FBI's *Appendix to Brief in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* ("FBI App."), filed April 30, 2007; and

(6) Correspondence from Plaintiff ("Resp."), filed May 16, 2007.

Based on the pleadings, the filings listed above and the applicable law, the Court recommends that

Defendants' motions to dismiss be **DENIED**.

## I. BACKGROUND

Plaintiff Taleb Said Dawoud ("Plaintiff"), a lawful permanent resident of the United States who proceeds *pro se* in this matter, filed the instant petition for a writ of mandamus ("Compl.") on September 22, 2006. His relatively brief complaint alleges that he filed an application for naturalization with the USCIS on January 7, 2004, and has been waiting more than three years for a decision. (*See* Compl.). Plaintiff contends that he passed the proficiency requirements for citizenship on July 9, 2004, but Defendant USCIS did not render a decision on his application because the background check being conducted by Defendant FBI had not been resolved. (Compl. at 1). Plaintiff has made several inquiries of Defendant USCIS and Defendant FBI (collectively, "Defendants") seeking the status of his application. The responses consistently advised Plaintiff that Defendant USCIS is awaiting the FBI background check. (*See* Compl.). Plaintiff's complaint seeks to have the Court "force these agencies whether the USCIS or FBI to do their Job." *Id*.

The application process for naturalization includes five stages: First, the applicant must submit (a) an application, (b) the requisite fee, (c) a legible set of fingerprints on Form FD258, (d) information relevant to the applicant's good moral character, and (e) a complete and detailed explanation of any criminal background. 8 U.S.C. § 1445(a); 8 C.F.R. §§ 334.2, 316.4. During the second stage of the naturalization application process, the USCIS conducts a background investigation. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. As part of this investigation, the FBI is required to complete a fingerprint clearance. In the third stage, the applicant is scheduled for an interview with a USCIS officer, is tested for English proficiency, and given a civics exam. 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3. If the applicant fails one or both of the exams, he will be retested at

a later date. If the USCIS officer needs additional documentation, he directs the applicant to submit such information. The USCIS officer has authority to grant or deny the application. *Id*. Fourth, a decision is made on the application. If the application is denied, the applicant has a right to request a hearing before an immigration officer. 8 U.S.C. § 1447(a); 8 C.F.R. § 336.2. In the fifth stage, an applicant whose application was approved takes an oath of allegiance and becomes a United States citizen. *See* 8 U.S.C. § 1448(a); *see also* (USCIS Br. at 5, n.5).

The scope of the background investigation performed by USCIS on applications for naturalization includes:

> "(a) a record check of the alien made against the Department of Homeland Security ("DHS") immigration system; (b) a Federal Bureau of Investigation ("FBI") fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (c) a check against the DHS-managed Interagency Border Inspection System ("IBIS"), which contains records and "watch list" information for more than twenty federal law enforcement and intelligence agencies, including the Central Intelligence Agency, FBI, other divisions of the United States Department of Justice, the Department of State, DHS/U.S. Customs and Border Protection and other DHS agencies; and (d) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS."

(USCIS Br. at 7).

As explained in the declaration of Michael Cannon, Section Chief of the National Name Check Program Section, the background investigation is performed on all applicants for immigration benefits in the United States. (*See* FBI App. at 6). Mr. Cannon provides a detailed summary regarding the resolution rate of name check requests received from USCIS. (*Id*. at 5). Approximately 68% of the name checks submitted by USCIS are processed and returned within 48-72 hours with a resolution of "no record." *Id*. The next category of pending name checks goes through a manual check, which is typically completed within 30-60 days. *Id*. Approximately 22%

of these are also resolved as "no record," which averages to about 90% of name checks returned with a resolution of "no record." *Id*. The last 10% of name checks are categorized as "possibly being the subject of an FBI record." *Id*. The processing for this group involves retrieving and reviewing the pertinent FBI record. *Id*. In some instances, the relevant FBI record can be accessed electronically from the FBI's Automatic Case Support record keeping system, but in other cases the information must be obtained from a paper record. (*See id*. at 5-6). If the information is not pertinent to the request, the FBI closes its investigation and notifies the USCIS that it has resolved the name check as "no record." (*Id*. at 6). In a small number of cases, less than 1%, the FBI resolves the name request as "possible derogatory information." *Id*. In those cases, the FBI forwards a summary of the derogatory information to USCIS. *Id*. In fiscal year 2006, the FBI processed more than 3.4 million name checks. *Id*. Given the number of applications, Mr. Cannon avers the FBI cannot give an estimate of the length of time that any one name check will remain pending. (*Id*. at 7). The FBI received a name check request for Plaintiff on or about February 3, 2004, and has not completed the investigation. (*Id*. at 8).

Defendants USCIS and the FBI have filed separate motions to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Court lacks subject matter jurisdiction, or alternatively, to remand the matter to the agency for further proceedings. Plaintiff filed a response[1] to Defendants' motions, and the issues are now ripe for determination.

## II. RULE 12(b)(1) STANDARD

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges

---

[1] Plaintiff filed a letter on May 16, 2007, advising the Court that his application remains pending and further attacking the explanation of the background name check process, which defendants provided in their motion to dismiss. The Court construes this correspondence as Plaintiff's response to Defendants' motions to dismiss.

a federal court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*. When the court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*.

The Fifth Circuit recognizes a distinction between a "facial attack" and a "factual attack" upon a complaint's subject matter jurisdiction. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998). "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed to be true. *Id*. (citation omitted). If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the attack, "[t]he plaintiff constantly bears the burden of proof that jurisdiction does exist." *Rodriguez*, 992 F. Supp. at 879 ("The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.") (citations omitted).

In this case, Defendant USCIS does not support its motion with evidence and thus presents

a facial attack. (*See* USCIS Br.). The Court therefore presumes Plaintiff's allegations in his complaint against Defendant USCIS to be true and must decide whether he has correctly alleged a basis for subject matter jurisdiction. *Rodriguez*, 992 F. Supp. at 878. Defendant FBI supports its motion with evidence. (*See* FBI App.). Thus, the Defendant FBI's motion presents a factual attack, which requires the Court to resolve matters outside the pleadings. *See Ramming*, 281 F.3d at 161; *see also Williamson*, 645 F.2d at 412-13. Accordingly, no presumption of truth attaches to Plaintiff's factual allegations against Defendant FBI. *See Williamson*, 645 F.2d at 412.

### III. USCIS'S MOTION TO DISMISS

Defendant USCIS moves to dismiss for lack of jurisdiction on the grounds that (1) the 120-day period under 8 U.S.C. §1447(b) has not been triggered, and (2) Plaintiff's application for naturalization is not ripe for judicial decision. (*See* USCIS Br. at 3-12).

Both of Defendant USCIS's arguments for dismissal are premised upon the assumption that Plaintiff invoked 8 U.S.C. § 1447(b) in his complaint. Defendant USCIS explains that because Plaintiff has not pleaded a specific statutory basis for jurisdiction, it has liberally construed Plaintiff's complaint to allege jurisdiction under 8 U.S.C. § 1447(b). (*See* USCIS Br. at 3, n. 3). Section 1447(b) provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. *Such court has jurisdiction* over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. §1447(b) (emphasis added). Plaintiff has clearly labeled his pleading as a "Mandamus complaint." (*See* Compl. at 1). While Plaintiff does not cite a specific statutory basis that provides the Court with subject-matter jurisdiction to review his "mandamus complaint," such an omission

is not fatal.  *See Taylor-Callahan-Coleman Counties Dist. Adult Probation Dep't v. Dole*, 948 F.2d 953, 956 (5th Cir. 1991) (holding that a plaintiff's failure to cite a specific jurisdictional basis in his complaint did not deprive the court of jurisdiction).  Plaintiff pleads that Defendant USCIS has unreasonably delayed in adjudicating his application and has responded to his inquiries with the excuse that Defendant FBI performs the background investigation "and they have no idea how long it [will] take to be ready."  (Compl. at 1).  Plaintiff asks the Court to compel Defendants to immediately adjudicate his Form N-400 application for naturalization; he does not ask the Court to adjudicate his application.  *Id*.  Nor does he refer to the expiration of the 120-day time period or anything else that could reasonably be construed as an attempt to invoke jurisdiction under §1447(b). Even liberally construing the allegations in the complaint, the Court finds that Plaintiff's allegations do not indicate any attempt to invoke jurisdiction under §1447(b). Rather, subject-matter jurisdiction may be founded on the Mandamus Act, 28 U.S.C. § 1361, or the Administrative Procedure Act ("APA"),  5 U.S.C. § 701 *et seq*., in conjunction with the federal question statute, 28 U.S.C. § 1331.

Because the Court finds that jurisdiction over this action is not premised on § 1447(b), Defendant USCIS's motion to dismiss should be **DENIED**.

### IV.  FBI'S MOTION TO DISMISS

Defendant FBI moves to dismiss Plaintiff's complaint under Rule 12(b)(1) on the grounds that the Court lacks subject matter jurisdiction to hear Plaintiff's claims for relief under the APA or the Mandamus Act.  (FBI Br. at 3, 9).

**A.    APA**

Federal judicial review of an agency action under the APA exists in conjunction with the

federal question statute, 28 U.S.C. § 1331; the APA does not afford an implied grant of subject-matter jurisdiction. *Dresser Indus., Inc. v. United States*, 596 F.2d 1231, 1238 (5th Cir. 1979). The APA authorizes suit by any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. Where no other statute provides a private right of action, the "agency action" complained of must be a "final agency action." 5 U.S.C. § 704. The APA expressly defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The APA does not apply, however, to the extent that "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

In this case, Plaintiff complains that Defendant FBI has failed to act by not completing his background investigation.² *See* Compl. at 1. The Supreme Court has cautioned that "[f]ailures to act are sometimes remediable under the APA, but not always." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004). The APA's remedy for claims involving an agency's failure to act is set forth in § 706, which states, in pertinent part: "[a] reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The Supreme Court found the term "failure to act" to be limited in the same ways as the agency actions defined in 5 U.S.C. § 551(13). *Norton*, 542 U.S. at 62. In other words, a claim under the APA for failure to act can proceed "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it

---

²Defendant FBI did not address whether the delay in processing Plaintiff's name check investigation constitutes a "final" agency action for purposes of the APA. (*See* FBI Br. at 3-9). Ordinarily, whether there is a final agency action is a jurisdictional prerequisite for relief under the APA. *See* 5 U.S.C. § 704. One exception occurs where, as here, a plaintiff claims that a governmental action was unlawfully withheld or unreasonably delayed. *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001). This is because where "an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review." *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir.1987).

is *required* to take." *Id*. at 64 (emphasis in the original). This standard applies for a claim of unreasonable delay as well, since a court can only compel agency action unreasonably delayed if the action is required. *See id*. at 63, n.1 (citing 7 U.S.C. § 706(1)). Although a court may compel an agency to act, it may not direct *how* it shall act. *Id*. at 64.

### 1. Duty to Act

The Court first considers whether Defendant FBI is legally required to conduct the background investigation.

As Defendant FBI notes, (*see* FBI Br. at 3-4), there is no statute or regulation that explicitly imposes a mandatory duty upon the FBI to investigate for the USCIS the criminal background of an applicant for citizenship. The USCIS, however, does have a mandatory duty to process applications for naturalization, 8 C.F.R. § 316.14, and as part of its review of an application, the USCIS must determine whether an applicant has met his burden to establish "good moral character." 8 U.S.C. § 1427(a). This inquiry entails several security and background checks, which includes an investigation of an applicant's criminal history and a name check, both of which are performed by the FBI. 8 U.S.C. §§ 1105(b), 1146; *see* USCIS Br. at 7. Thus, while there is no statute or regulation that explicitly imposes a mandatory duty upon the FBI to conduct a background investigation, the USCIS does have a mandatory duty to inquire into an applicant's moral character, and the completion of this inquiry is conditioned upon the FBI performing a background investigation.

Neither the Supreme Court nor the Fifth Circuit has considered whether the FBI has a duty to perform a background investigation as part of the USCIS's inquiry into the moral character of an applicant for citizenship. The majority of the few courts to address the issue have specifically found

that the FBI has a mandatory duty to perform backgrounds checks; this is based upon the statutory provisions (1) that allow the FBI to establish and collect fees in order to process fingerprint identification records and (2) that provide aliens must pay an application fee to USCIS, a portion of which USCIS must share with the FBI. *See Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400 (E.D. Pa. 2007) (holding that Congress imposed a mandatory duty on the FBI to complete background investigations through statutes that require USCIS to obtain a background investigation and collect and share fees for FBI's investigations) (collecting cases); *see also Khdir v. Gonzales*, 2007 WL 3308001, at *6 (D. Colo. Nov. 6, 2007).[3] The Court finds the majority view persuasive.

Defendant FBI also asserts that it is under no deadline to perform a background investigation and relies upon *Shalabi v. Gonzales*, 2006 WL 3032413 (E.D. Mo. Oct. 23, 2006) in support of its assertion. (FBI Br. at 4). In *Shalabi*, the district court for the Eastern District of Missouri held that it lacked jurisdiction under the Mandamus Act to compel the FBI to complete the background investigation because "[t]here is no statute or regulation which imposes a deadline for the FBI to complete a criminal background investigation." *Shalabi*, 2006 WL 3032413, at *5. This finding is at odds with several cases in the Northern District of Texas which have found that in the absence of any other statutory deadlines, the "reasonable time" requirement established in 5 U.S.C. § 555(b) applies. *See Elmkalky v. Upchurch*, 2007 WL 944330, at *3 (N.D. Tex. Mar. 28, 2007) (Boyle, J.) (citing cases); *see also Goldschmidt v. U.S. Atty. Gen.*, 2007 WL 3033502, at *2 (N.D. Tex. Oct. 18, 2007) (Sanderson, Mag.) (finding that persons who have filed immigration applications have a clear

---

[3] *But see Konchitsky v. Chertoff*, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007) (holding the court had no jurisdiction to compel the FBI because its involvement in adjudicating immigration benefit applications arose from a contract between it and USCIS and not a statutory duty). As previously discussed, the manner in which Defendant USCIS conducts the required investigation into an applicant's moral character imposes a mandatory duty on Defendant FBI to conduct the background investigation.

right to adjudication within a reasonable period of time); *Alsharqawi v. Gonzalez*, 2007 WL 1346667, at *4 (N.D. Tex. Mar. 14, 2007) (Godbey, J.) (finding that § 555(b) applies when Congress fails to specify a time period). Section 555(b) provides, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Further, while the statutes relating to applications for immigration benefits do not provide a specific time frame within which the application must be processed, there is an express directive that Congress intended "that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Based on this statutory authority, the Court agrees with the reasoning of *Elmkalky*, *Goldschmidt*, or *Alsharqawi*.[4]

In conclusion, the Court finds based on the governing statutory provisions and persuasive case law that the FBI has a non-discretionary duty to complete Plaintiff's background investigation, which includes the name check, within a reasonable time. *Id*.

**2. Unreasonable Delay**

To show a right to judicial review under APA § 706(1), Plaintiff must establish that Defendant FBI's delay in performing its nondiscretionary duty to conduct a background investigation is unreasonable. *See Norton* 542 U.S. at 63, n.1; *see also* 5 U.S.C. §§ 555(b), 706(1). In *Telecommunications Research and Action Center v. FCC*, the court of appeals for the District of Columbia identified six factors relevant to determining whether agency delay is unreasonable:

---

[4]The Defendant FBI also relies upon *Sozanski v. Chertoff*, 2006 WL 4516968 (N.D. Tex. Dec. 11, 2006) (Godbey, J.). *Sozanski* is distinguishable from the instant case, however, in that it addressed an alien's application to adjust status to that of a lawful permanent resident; it did not address whether the FBI had a statutory duty to perform a name check on a lawful permanent resident's application for naturalization. *Id.* at *1. The Court also notes that *Sozanski* ruled on a single motion to dismiss by the USCIS and the FBI; it did not distinguish between the duties owed to the plaintiff by the USCIS and those owed by the FBI. *Id*.

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

750 F.2d 70, 80 (D.C. Cir. 1984) (citations omitted). Several courts have recognized that "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *See, e.g., Elmkalky*, 2007 WL 944330, at *6 (internal citation and quotation omitted).

In this case, it is undisputed that Plaintiff's application for naturalization has been pending for almost four years; Defendants' sole explanation for the delay is that his FBI name check has not been completed. (*See* Compl.; FBI App. at 8). The factual background provided by Defendants generally describes the background investigation process but fails to explain why Plaintiff's particular background investigation has not been completed. (*See* FBI App. at 1-8). The affidavit provided by Michael Cannon simply states that the "results of [Plaintiff's] name check will be forwarded to USCIS in Washington, D.C., in due course, in accordance with FBI's normal protocol." (*See id*. at 8, ¶22). As Defendant FBI has described the name check process as one where data is primarily retrieved from an electronic database, and only occasionally from paper records, it does not seem reasonable that this process would take almost four years to complete. The Court is mindful of the burden that steadily increasing applications for citizenship have placed on Defendants, but Plaintiff submitted his application for naturalization almost four years ago, long before recent events greatly increased Defendants' workload. The Court finds Plaintiff has made

an initial showing that the FBI has unreasonably delayed in completing the background name check for Plaintiff. *See*, *e.g.*, *Alsharqawi*, 2007 WL 1346667, at *4 (finding Defendants' delay of nearly four years to be unreasonable); *Elmkalky*, 2007 WL 944330, at *6 (finding that plaintiff made a *prima facie* showing that a near three-year delay is unreasonable); *Al-Juburi v. Chertoff*, 2007 WL 2285964, at *4 (N.D. Tex. Aug. 9, 2007) (Fitzwater, J.) (declining a Rule 12(b)(1) motion because an allegation of a three year delay was sufficient to suggest the delay was unreasonable).

After weighing the evidence submitted in connection with the Defendant FBI's factual attack on subject matter jurisdiction, the Court is satisfied as that it has the power to hear Plaintiff's case. *See Williamson*, 645 F.2d at 413. Because it is undisputed that the Defendant FBI has failed to take action which this Court has determined to be non-discretionary, and Plaintiff has made a *prima facie* showing of unreasonable delay, the Court finds that it has jurisdiction under the APA to review Plaintiff's claim for relief. *See Norton*, 542 U.S. at 64.

For these reasons, Defendant FBI's motion to dismiss Plaintiff's claims raised under the APA should be **DENIED**.

**B.** **Mandamus Act**

Defendant FBI also moves for dismissal under Rule 12(b)(1) of Plaintiff's claim for relief under the Mandamus Act. (FBI Br. at 9-10).

A federal court's jurisdiction over a writ of mandamus is provided in 28 U.S.C. §1361, which states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. §1361. Mandamus may only be invoked in extraordinary situations. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). Further, the law is well-

established that "[m]andamus is not available to review discretionary acts of agency officials." *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984). Mandamus relief is appropriate "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). In order to establish jurisdiction under § 1361 and an entitlement to relief, a plaintiff must show: (1) he has a clear right to the relief sought; (2) the defendants have a nondiscretionary duty to perform; and (3) no other adequate remedy is available. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980. The failure to demonstrate the existence of any one of these three elements deprives the Court of jurisdiction and the power to grant mandamus relief. *See id*.

Defendant FBI moves for dismissal solely upon the grounds that it is under no duty to perform Plaintiff's name check. (FBI Br. at 9-10). Several courts have found that when a plaintiff seeks to use mandamus jurisdiction to compel an action, the same principles and standards for determining subject matter jurisdiction apply to both the Mandamus Act and the APA.[5] *Sawad v. Frazier*, 2007 WL 2973833, at *3 n.5 (D. Minn. Oct. 9, 2007); *see Yan v. Mueller*, 2007 WL 1521732, at *8 (S.D. Tex. May 24, 2007). As discussed in Part IV.A.1, *supra*, Defendant FBI has a non-discretionary duty to complete Plaintiff's background investigation. Accordingly, the Court recommends that Defendant FBI's motion to dismiss Plaintiff's claim for relief under 28 U.S.C. § 1361 be **DENIED**.

## V. MOTIONS TO REMAND

Alternatively, both Defendants move pursuant to 8 U.S.C. § 1447(b) to remand the matter to the agency for further adjudication of Plaintiff's application for naturalization. (*See* USCIS Br.

---

[5]One court in this district previously has declined to decide whether it has mandamus jurisdiction when jurisdiction exists under the APA. *See Al-Juburi*, 2007 WL 2285964, at *1.

at 12; FBI Br. at 10). As discussed in Part III, the Plaintiff has not invoked the Court's jurisdiction under § 1447(b). Accordingly, the Court recommends that Defendants' motions to remand be **DENIED**.

## VI. RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendant USCIS's *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* and Defendant FBI's *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, Alternatively, to Remand* be **DENIED**.

**SO RECOMMENDED** on this 30th day of November, 2007.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on plaintiff by mailing a copy to him. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE